UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 15-cr-10343-IT |
| | * | |
| JOHN BARBOSA, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

July 22, 2016

TALWANI, D.J.

I.   Introduction

On November 12, 2015, a grand jury indicted Defendant John Barbosa ("Barbosa") on a charge of Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1). Barbosa has moved to suppress the firearm and ammunition which were seized incident to an arrest. Barbosa contends the search was unlawful because (1) the government has not established that an arrest warrant was validly issued prior to the arrest and (2) there was insufficient probable cause to support the arrest warrant. For the following reasons, Barbosa's motion is DENIED.

II.   Background

According to the Application for Criminal Complaint dated August 8, 2015, and signed by Officer Gregory Sirois of the New Bedford Police Department, Jillian Poeira and her mother Ana Poeira spoke with Officer Sirois at approximately 12:45 p.m. that day. Def.'s Mot. Suppress Ex. A 3 [#37-1]. They reported that at 7:00 that morning, Barbosa knocked on the door to Ana and Jillian Poeira's home. The Poeiras reported that when Ana Poeira opened the door, Barbosa pushed his way inside demanding to see Jillian Poeira. The Poeiras reported further that Ana

Poeira pushed Barbosa against the wall and held him there, and as she did, he raised a black firearm into the air, pointed it at Ana and Jillian Peoeira and and threatened to "kill all of you." Id. Jillian Poeira's two children from a prior relationship with Barbosa's cousin were present during the incident. Id. The women reported that Ana Poeira managed to push Barbosa back out the door, at which time he left. Id. When asked why they waited nearly six hours to make the report, Ana Poeira stated that she had a doctor's appointment and Jillian Poeira stated that she was scared. Id.

The Application reports further that Jillian Poeira told Officer Sirois that she and Barbosa were formerly boyfriend and girlfriend and had lived together for a period of time, along with the two children. Id. Jillian Poeira also told Officer Sirois that after she and Barbosa ended their relationship in January, she moved into her mother's house (for which the Poeiras provided an address) and Barbosa stayed in the home they had been living in together for a couple of months before leaving and splitting his time between Boston and Atlanta, Georgia. Id. Jillian Poeira stated that Barbosa had returned to the New Bedford area two weeks before the incident. Id. The application also reports that Jillian Poeira informed Officer Sirois that Barbosa drove a gray Volvo station wagon and that Officer Sirois confirmed that a gray Volvo was registered in Barbosa's name. Id. Officer Sirois put out a "Be On the Look Out" notice for Barbosa's car. Id. at 4.

The Application reports further that Officer Sirois assisted Jillian Poeira in filling out a complaint for an emergency restraining order, per her request, and called Judge Abber, who issued the order. Id. Officer Sirois checked for, but did not find, any outstanding warrants or restraining orders as to Barbosa and Jillian Poeira. Id. Officer Sirois did find that Barbosa had a "lengthy BOP (Board of Probation record) in Massachusetts including firearms charges and other

violent crimes." Id.

According to New Bedford Police Detective Michael J. Melo's Supplemental Narrative Report dated August 10, 2015, Jillian Poeira spoke with Sergeant Holmes of the New Bedford Police Department about Barbosa on Monday August 10, 2015, prompting Sergeant Holmes to direct Detective Melo to check on the status of the requested warrant. See Gov't's Resp. Court Inquiry Ex. 1 2 [#44-1]. Detective Melo reports that he spoke with "Maria in the clerks office [sic] who confirmed a warrant for John Barbosa for armed home invasion." Id. Detective Melo reports further that he then went with Officer Lucas to his unit and that Officer Lucas "again confirmed on his data terminal an active warrant for John Barbosa." Id. This statement was corroborated by Officer Lucas who testified that shortly before arresting Barbosa, he logged onto the Warrant Management System database from a computer in his police cruiser and confirmed that a warrant had issued from New Bedford District Court for Barbosa's arrest.

At approximately 1:22 p.m. on Monday August 10, 2015, Officer Lucas, Detective Melo and other New Bedford Police officers entered the New Bedford Public Library and arrested Barbosa. A firearm and ammunition were seized from a bag near Barbosa.

III.   Discussion

   A.   *Existence of a Valid Arrest Warrant*

Barbosa contends that the search incident to arrest was not lawful because the government has not demonstrated that an arrest warrant that is valid under Massachusetts law was issued prior to his arrest. For an arrest pursuant to an arrest warrant to be lawful, the warrant must have validly issued prior to the arrest. Burke v. Town of Walpole, 405 F.3d 66, 78 (1st Cir. 2005). Barbosa points to Mass. Gen. Laws ch. 276, § 22, which requires that warrants "compl[y] with the provisions of the Massachusetts Rules of Criminal Procedure," and Massachusetts Rules

3

of Criminal Procedure 6(b)(1), which requires that an arrest warrant be "signed by the official issuing it." He attaches to his memorandum a printout from the Warrant Management System. That printout states that it was printed at 2:00 p.m. (which was after Barbosa's 1:22 p.m. arrest) "but does not disclose the time of issuance" and has "no authorized signature apparent." Def.'s Mem. Law Supp. Mot. Suppress 4 [#37]; see also id. Ex. B [#37-2]. The printout does state, however, that "Pursuant to Massachusetts General Laws ch. 276 s.23A this is a TRUE WARRANT on the person named herein as contained in the Warrant Management System. . . ." Def.'s Mem. Law Supp. Mot. Suppress Ex. B [#37-2]. The printout further names John A. Barbosa as the "defendant," states that the "Issue Date" of the warrant is August 10, 2015, and lists Patrick Walsh in the space for "Judge's Name." Id.

The government offers an additional document to establish the validity of the warrant. The document is a copy of Officer Sirois's Application for Criminal Complaint from August 8, 2015 with additional notations setting forth the date "8-10-15," checked boxes under the line "complaint to issue" for "probable cause found for above offense(s)," "offense no(s). 1," "based on facts set forth in the attached statement(s)," and "warrant to issue," and the initials "PW" in the box titled "Clerk/Judge." Id. at 2.[1]

Officer Sirois, a 27-year veteran of the New Bedford Police Department and the officer who interviewed the Poeiras and made out the Application for Criminal Complaint, testified to the general procedure for applying for, issuing, and checking for warrants based on his experience. Officer Sirois testified that once an officer prints and signs the Application for Criminal Complaint, he sends it to New Bedford District Court for a clerk-magistrate to

---

[1] Although the document is stamped: "NEW BEDFORD DISTRICT COURT 15 AUG 10 AM 8:12," id., it is not evident from the face of the document or otherwise from the record what this time stamp represents. Id.

determine whether the application establishes probable cause. If so, the clerk-magistrate checks the boxes on the first page of the Application for Criminal Complaint for "probable cause" and "to issue a warrant" and signs or initials the Application for Criminal Complaint. A court clerk then enters the information into a computerized Warrant Management System, a statewide database of active warrants. Based on his training and experience, Officer Sirois stated his understanding that the creation of the Warrant Management System eliminated physical paper warrants. It is also his understanding that the warrant becomes effective when the clerk-magistrate checks the "warrant to issue" box and initials the Application for Criminal Complaint, and that a printout from the Warrant Management System serves as evidence of the existence of the warrant but is never signed by the clerk-magistrate.

    Barbosa directs the court's attention to Commonwealth v. Muller, No. 04-0775, 2004 Mass. Super. Ct. LEXIS 546 (Mass. Super. Ct. Sept. 28, 2004), a Massachusetts Superior Court opinion written by now-Chief Justice Gants of the Massachusetts Supreme Judicial Court. In Muller, the Clerk of the Malden District Court (an individual authorized to issue arrest warrants pursuant to Mass. Gen. Laws ch. 213, § 33) checked the boxes on an application for complaint for "sufficient evidence presented" and "warrant" and signed his initials below the box titled "Authorized by." Id. at *4. The Clerk then handed the document to an employee in the clerk's office who was not authorized to issue warrants; that employee generated a paper arrest warrant based on the information in the document and also entered the warrant into the Warrant Management System. Id. at *4-5. "In keeping with the usual practice of the Malden District Court, the paper Arrest Warrant was never seen by [the Clerk]; nor was it signed by him or any other Clerk-Magistrate or Assistant Clerk." Id. at *5. Similarly here, it appears that Patrick Walsh authorized the issuance of a warrant by checking the appropriate boxes and initialing the

5

Application for Criminal Complaint and that the information from the Application for Criminal Complaint was inputted to the Warrant Management System. No evidence has been offered that any paper Arrest Warrant was created and signed.

The court in Muller concluded that the Clerk's failure to sign the arrest warrant, "which apparently was common practice in the Malden District Court," did not meet the requirements of Massachusetts Rule of Criminal Procedure 6(b)(1) and thus violated Mass. Gen. Laws ch. 276, § 22. Id. at *12. The court further held this statutory violation rendered the warrant invalid under Article 14 of the Massachusetts Declaration of Rights. Id. at *12-13.

Barbosa argues that because the arrest warrant in his case suffers from the same defects as the arrest warrant in Muller, the court must find his arrest warrant invalid *and* suppress the fruits of the search incident to his unlawful arrest. But in Muller, after issuing the opinion cited by Barbosa, the court issued another opinion emphasizing that it had found the arrest warrant "void and invalid under art. 14 of the Massachusetts Declaration of Rights, not the Fourth Amendment of the United States Constitution." Commonwealth v. Muller, No. 04-0775, 2004 Mass. Super. LEXIS 554, at *21-22 (Mass. Super. Ct. Nov. 4, 2004). Muller thus does not support the claim that the arrest warrant was unlawful under the Fourth Amendment to the United States Constitution. In addition, the court clarified further that suppression for the violation of state law was not warranted, because the omission of the Clerk's signature was a "technical violation" and because the error was attributable to the judiciary rather than to the police. Id. at *24-26.

In any event, the "good faith" exception to the exclusionary rule under federal law provides that suppression is not an appropriate remedy if it would not serve the policy justifications of the rule, including "deter[ring] police misconduct rather than… punish[ing] the

errors of judges and magistrates." United States v. Leon, 468 U.S. 897, 916 (1984). In Leon, the Supreme Court held that when an officer executes a warrant in "objective good faith," which includes "objectively reasonable reliance on a subsequently invalidated search warrant," suppression is not justified. Id. at 920-22. Later cases have expanded this holding, finding that suppression is only proper when police conduct is "sufficiently deliberate that exclusion can meaningfully deter it" and "sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009). The "good faith" exception also applies when police have an objectively reasonable basis to believe a warrant exists but it actually does not. See Massachusetts v. Sheppard, 468 U.S. 981, 990-91 (1984) (declining to suppress the fruits of a search incident to arrest made without a valid warrant because the warrant was made invalid by a judge's clerical errors, not misconduct on the part of the police).

     Assuming that the absence of a signed paper arrest warrant somehow amounted to a Fourth Amendment violation, this "good faith" exception nevertheless applies. No police misconduct caused the purported technical defect of the clerk-magistrate not signing a paper arrest warrant; that purported error is attributable to the clerk-magistrate. Moreover, Officer Lucas's testimony confirming that he called up information from the Warrant Management System in his cruiser moments before the arrest, combined with Officer Sirois's testimony as to the general practices of officers in obtaining and retrieving warrants from the Warrant Management System, establishes that Officer Lucas's reliance on the representation in the Warrant Management System that a warrant had issued at the time of the arrest was objectively reasonable. Under these circumstances, suppression is not warranted by the alleged invalidity of the warrant. See Arizona v. Evans, 514 U.S. 1, 15 (1995) (holding that suppression was not

appropriate when the police acted in reliance on the court clerk, who mistakenly told police that there was an arrest warrant for the suspect due to a clerical error, because "application of the exclusionary rule also could not be expected to alter the behavior of the arresting officer"); see also United States v. Henderson, 229 F. Supp. 2d 35, 43 (D. Mass. 2002) (denying a motion to suppress evidence on the grounds that the arrest warrant was faulty because the officers reasonably relied on their Warrant Management System).

### B.   *Existence of Probable Cause*

Barbosa also disputes the existence of probable cause to issue the arrest warrant. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The probable cause requirement applies to arrest warrants as well as search warrants. Whiteley v. Warden, 401 U.S. 560, 564 (1971). Probable cause requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). Sufficient information must be presented to the magistrate issuing a warrant to allow the magistrate to independently determine whether probable cause exists. Id. at 239. In reviewing the adequacy of probable cause for a warrant, a reviewing court is "tasked with making a judgment based on what appears within the four corners of the affidavit." United States v. Tanguay, 787 F.3d 44, 53 (1st Cir. 2015) ("Tanguay I"). Reviewing courts should give "great deference" to the magistrate's determination of probable cause. Spinelli v. United States, 393 U.S. 410, 419 (1969).

Barbosa asserts that the statements of the victims and witnesses, Jillian and Ana Poeira, were insufficient to support a finding of probable cause on their own. While a victim's statement does not establish probable cause *per se*, B.C.R. Transport Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984), police officers can "justifiably rely upon the credible complaint" of a victim to

support a finding of probable cause. Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004); see Murrell v. Petruzziello, No. 12-11727-FDS, 2013 WL 3786466, at *3 (D. Mass. July 17, 2013) (determining that police officers' "good faith reliance" on a victim's statement supported a finding of probable cause, even though the statement later turned out to be false). Indeed, the "uncorroborated testimony of a victim or other percipient witness" is usually sufficient on its own to support a finding of probable cause. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004). A victim is considered a "reliable informant" even if "his or her reliability has not theretofore been proven or tested." Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir. 1972).

Here, it was reasonable to rely on the accounts of Jillian and Ana Poeira. Both women reported that they were present when Barbosa came to the house and they shared a similar account of the event. See Healy v. Town of Hull, NO. 97-11257-GAO, 2000 U.S. Dist. LEXIS 421, at *11-13 (D. Mass. Jan. 12, 2000) (finding probable cause for an arrest established based on the statements of the victim and her two friends who served as eyewitnesses). That both women met with Officer Sirois in person and gave Officer Sirois their address supports an inference that their allegations were truthful. See United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005) (noting that an officer's "face-to-face contact" with an informant supports the informant's reliability and an informant identifying himself so that he could be held responsible for providing false information "tends to establish an incentive for the informant to tell the truth").

Although B.C.R. Transport Co. does hold that an alleged victim's statement does not establish probable cause *per se*, Barbosa relies too heavily on this anomalous case. See Acosta, 386 F.3d at 8 (noting that "the outcome in B.C.R. Transport represented the exception, not the

9

rule"). In B.C.R. Transport, the police quickly suspected that the complaining witness, a drifter picked up off the road, was intoxicated because he was "yelling obscenities and repeating incoherent phrases." B.C.R. Transport Co., 727 F.2d at 9. The court concluded that the jury was reasonable in deciding that the drifter's complaints alone were insufficient to establish probable cause to arrest the person that the drifter complained about. Id. at 10. Here, there is no suggestion that the two complaining witnesses were intoxicated or otherwise impaired when they went to the police station. Moreover, the officer's ability to corroborate certain details of the Poeiras' story, namely, the existence of the gray Volvo registered to Barbosa and Barbosa's criminal history of firearms charges, bolstered the credibility of both the victims and their account. See Alabama v. White, 496 U.S. 325, 332 (1990) (holding that police officers' independent corroboration of certain details of an anonymous informant's account "imparted some degree of credibility" to the rest of the informant's allegations).

Barbosa nevertheless contends that Officer Sirois had a duty to investigate the Poeiras' allegations further before submitting the Application for Criminal Complaint to the clerk-magistrate. The First Circuit has "rejected the proposition that a police officer has a standing obligation to investigate possible defenses or resolve conflicting accounts prior to making an arrest." Holder v. Town of Sandown, 585 F.3d 500, 505 (1st Cir. 2009) (citation omitted). When an officer has a complaint from a seemingly credible eyewitness, "exculpatory evidence must be substantial" to require the officer to investigate further. Acosta, 386 F.3d at 11. A duty to investigate further only arises in "highly idiosyncratic circumstances." Id.; see also Tanguay I, 787 F.3d at 53 (determining that an officer had a duty to investigate further when the officer knew that the witness had a history of possible mental instability, "scrapes" with the law, and a conviction for altering prescriptions).

In assessing whether the circumstances trigger a duty to investigate further, the court must first decide "whether the information known to [the officer] gave [the officer] an obvious reason to doubt" the complainant's truthfulness and if so, whether those doubts were "of such a magnitude" that failure to investigate further amounted to "reckless disregard for the truth." Tanguay I, 787 F.3d at 54. If the answer to both questions is yes, the next inquiries are whether a "good-faith effort to dispel those doubts" would have uncovered new information that should have been included in the affidavit and whether an affidavit that included that new information would "continue to support a finding of probable cause." Id.

Barbosa argues that Officer Sirois' duty to investigate was triggered by the age and size disparity between Ana Poeira and Barbosa, the Poeiras' waiting for several hours to report the incident, and Barbosa and Jillian Poeira's pre-existing relationship. None of these facts give rise to any "obvious reason" to doubt the witness' veracity, let alone a reason of such magnitude to suggest that Officer Sirois's failure to investigate further evinces a reckless disregard for the truth.

As to the age and size disparity, Barbosa contends that the police report (a copy of which has not been provided to the court) shows that Ana Poeira was 60 years old at the time of the incident, and that the Warrant Management System printout shows that Barbosa was 41 years old and weighed 180 pounds. Even assuming these facts are true and were known to Officer Sirois, they do not call into question the truthfulness of the women's account of the event. Had they reported that Barbosa had physically resisted Ana Poeira after entering the apartment and that she had somehow physically overpowered him despite his resistance, the age and size differences might be of note. Instead, the report that after Barbosa pushed by Ana Poeira, she pushed him against the wall, held him there while he raised a gun and made verbal threats, and then managed

11

to push him back out of the door suggests not that the women were untruthful but rather that Barbosa did not engage with them physically after first pushing into the apartment. That Barbosa may not have resisted being pushed back out of the house, however, does not eliminate probable cause for the crime of Armed Home Invasion for allegedly being armed with a dangerous weapon and threatening the imminent use of force once inside. See Holder, 585 F.3d at 506 (finding an officer was not unreasonable in finding probable cause because there was no reason "inherent in the situation" to believe that the complaining victim lied about the accused pushing her, even when the accused offered a differing account and evidence existed that the parties were not on good terms); see also White v. Town of Marblehead, 989 F. Supp. 345, 350 (D. Mass. 1997) (rejecting a suggestion that the complaining victim's profession, appearance, and intoxicated state "should have triggered doubts on the part of the responding officers" because she told a coherent and credible story and emphasizing the importance of overlooking stereotypes when assessing an alleged victim's story).

Barbosa also suggests that the nearly six-hour delay in reporting the incident created an obvious reason to doubt the veracity of the complainants. Officer Sirois reportedly asked the women why they had not reported the incident sooner, to which they answered that Ana Poeira had a doctor's appointment and Jillian Poeira was scared. Barbosa suggests that Officer Sirois should have probed these facially plausible explanations even further and verified whether Ana Poeira in fact had a doctor's appointment. The law plainly does not require that level of investigation when assessing probable cause. See Acosta, 386 F.3d at 11 ("[W]e have made it clear that an officer normally may terminate [his] investigation when [he] accumulates facts that demonstrate sufficient probable cause.").

Additionally, Barbosa cites District Court decisions from the Second Circuit stating that

officers have a duty to investigate further when an acrimonious prior relationship exists, as that may suggest motive to make false accusations. See, e.g., Selvaggio v. Patterson, 93 F. Supp. 3d 54, 69 (E.D.N.Y. 2015) (remarking that a "bitter prior relationship" between the complaining victim and the accused may create a motive for a false accusation, possibly necessitating the officer to investigate further). No such rule exists in the First Circuit. See Holder, 585 F.3d at 505 (rejecting the argument that an officer has a reason to suspect the witness and thus a duty to investigate further when the officer knows about "a 'bad relationship' between the person under suspicion and a witness to the alleged crime"); see also Hayes v. Town of Uxbridge, No. 13-40102-TSH, 2014 WL 1874745, at *4 (D. Mass. May 8, 2014) (determining that existing animus between the complainant, a police officer, and the arrestee does not undermine probable cause). Moreover, at least one court in this District has stated that the existence of a prior relationship may lend more, not less, credence to the victim's statements, and has cautioned against officers being overly skeptical of victims' accounts, particularly in domestic violence situations. See White, 989 F. Supp. at 349 (stating that "permitting the police to rely on a victim's credible statement in order to determine probable cause is critical," particularly in cases of domestic violence where ignoring a victim's statement may lead to "tragic results").

      Further, even the cases out of the Second Circuit that Barbosa cites suggest that a *bitter* relationship with the alleged assailant may be an indication that the complainant had a motive to lie. Barbosa himself notes that was no record of domestic violence between Jillian Poeira and him and suggests that the complainants' account was implausible precisely because there was allegedly no history of violence. The lack of a prior record of domestic violence neither makes the complainants' story incredible, nor does it suggest that Jillian Poeira had any motive to lie.

      In sum, none of the information known to Officer Sirois raised any serious doubts about

the victims' credibility; he therefore had no duty to investigate further, and it follows that his failure to do so was not reckless.

Moreover, even if a duty to investigate further were triggered, it is unclear what information Officer Sirois would have found through a "good-faith effort to dispel . . . doubts" that would weaken probable cause. Barbosa suggests that the officer may have discovered some information undermining the witnesses' credibility, but even discovery of those facts would not destroy probable cause. See United States v. Tanguay, 811 F.3d 78, 81 (1st Cir. 2016) ("Tanguay II") (upholding the district court's determination upon remand that including complainant's conviction for making a false police report in the affidavit would not have destroyed probable cause).

In addition, Barbosa suggests that, if not otherwise known to Officer Sirois, a further investigation would have revealed that Ana Poeira saw Barbosa on the other side of the door when she opened it for him, as she testified under oath to a grand jury. Barbosa contends that the inclusion of this fact in the affidavit would have vitiated probable cause because it would have established that Ana Poeira consented to Barbosa entering her home and the offense for which the warrant was sought—Armed Home Invasion—does not encompass such a lawful entry into a dwelling.[2]

Barbosa's argument is flawed for two reasons. First, Barbosa points to no authority to

---

[2] The statute reads: "Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years." Mass. Gen. Laws. ch. 265, § 18C (2004).

suggest that opening a door knowing someone is on one side is tantamount to giving consent for that person to come inside. Second, while it is true that the Armed Home Invasion statute covers only "unlawful entry" and that "the crime of armed home invasion is not intended to encompass situations where an invited guest in a home suddenly turns violent," Commonwealth v. Mahar, 722 N.E.2d 461, 468 n. 6 (Mass. 2000), it is also true that "purported consent cannot be considered legally significant unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside," id. at 460. See also Commonwealth v. Putnam, 914 N.E.2d 969, 975 (Mass. App. Ct. 2009) (finding that "permissive entry, premised on consent to enter, is negated" if the occupant giving consent is either unaware that the person is armed, or aware that the person is armed but "unaware that he intends to commit a crime once inside"). Thus, there is a critical distinction between allowing someone to enter, and allowing someone to enter knowing that he wields a weapon and plans to commit an assault. Mahar, 722 N.E.2d at 469 n. 7. Accordingly, even if Officer Sirois had included in his affidavit that Ana Poeira saw Barbosa on the other side of the door when she opened it, the affidavit "would continue to support a finding of probable cause" for the offense of Armed Home Invasion. Tanguay I, 787 F.3d at 54; see also Putnam, 914 N.E.2d at 973-74 (upholding the jury's determination that entry was unlawful because the jury could infer that the victim only allowed the defendant in because she felt she had no other choice and "a jury permissibly could find that she did not know he was armed with a knife and that he intended to attack her once inside").

    For all of the foregoing reasons, Barbosa has not established that Officer Sirois's statement of facts was insufficient to support probable cause nor that he had any duty to investigate the complaints further.

C.   *Omission of Facts*

Barbosa further argues that if Officer Sirois did know that Ana Poeira opened the door knowing that Barbosa was on the other side, Officer Sirois's failure to include this alleged fact in his affidavit was a reckless omission of a fact material to the magistrate's probable cause determination. In essence, Barbosa challenges the truthfulness of Officer Sirois's affidavit.

An officer's affidavit supporting a search warrant application is presumed to be valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). A defendant is, however, entitled to a hearing to challenge the validity of the affidavit if he makes a "substantial preliminary showing" that the officer included false statements in the affidavit knowingly, intentionally, or with "reckless disregard for the truth" and that the "allegedly false statement" was "necessary to the finding of probable cause." Id. at 155-56. The omission of material information may also entitle a defendant to a so-called "Franks" hearing, if the defendant shows that the omission was "either intentional or reckless" and that the "omitted information, if incorporated into the affidavit . . . [is] sufficient to vitiate probable cause." Tanguay I, 787 F.3d at 49. To make the "substantial preliminary showing" necessary to obtain a Franks hearing, the defendant must point out with specificity the errors in the affidavit in a way that is "more than conclusory" and provide a statement of supporting reasons. Franks, 438 U.S. at 171. "[A]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id.

As the government notes, Barbosa has not specifically asked for a Franks hearing. Barbosa does, however, allege that the omission of potentially exculpatory material facts from Officer Sirois' statement amounts to a Fourth Amendment violation, which would require a Franks hearing to prove. Thus, to the extent Barbosa seeks such a hearing, that request is denied

as Barbosa has not made the necessary showing for the following reasons.

First, it is arguable whether Officer Sirois even omitted the alleged fact that Ana Poeira opened the door knowing that Barbosa was on the other side, as the affidavit does state that "Ms. Ana Poiera opened the door." Def.'s Mot. Suppress Ex. A [#37-1]. Second, to the extent the statement omits the further alleged fact that Ana Poeira saw Barbosa on the other side of the door, Barbosa has made no showing that that was an intentional omission. Indeed, Barbosa has introduced no evidence—through affidavit or otherwise—that Officer Sirois knew that Ana Poeira saw Barbosa on the other side of the door, nor has Barbosa explained the absence of such evidence.

In addition, Barbosa has not established that Officer Sirois's omission of this alleged fact was reckless. "Recklessness may be inferred directly from the fact of omission only if 'the omitted information was *critical* to the probable cause determination.'" Tanguay I, 787 F.3d at 49 (quoting Burke, 405 F.3d at 81) (emphasis in original). As noted above, whether Ana Poeira realized who was on the other side of the door when she opened it or not is not critical to determining whether Barbosa entered unlawfully. Accordingly, the omission of that fact neither suggests recklessness nor would the inclusion of that fact undermine the probable cause determination. Barbosa has therefore not established he is entitled to a Franks hearing and may not challenge the validity of the search warrant affidavit.

IV.     Conclusion

For the above-stated reasons, Barbosa's Motion to Suppress [#37] is DENIED.

Date:  July 22, 2016                                     /s/ Indira Talwani
                                                         United States District Judge