UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal No. 15-cr-10343-IT |
| JOHN BARBOSA, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

November 7, 2016

TALWANI, D.J.

I.    Introduction

The defendant, John Barbosa ("Barbosa") stands indicted under 18 U.S.C. § 922(g)(1),

on one count of possession of a firearm and ammunition after having been convicted of a felony.

On July 22, 2016, this court denied Barbosa's motion to suppress a firearm and ammunition

which were seized incident to his August 10, 2015, arrest. Mem. & Order [#58]. Barbosa now

moves for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), on the veracity of the

information contained in the arrest warrant. Def.'s Mot. Franks Hr'g [#71]. For the following

reasons, Barbosa's Motion for a Franks Hearing [#71] is DENIED.

II.    Background

On August 8, 2015, Jillian Poeira and her mother, Ana Maria Poeira (hereinafter,

collectively, "the Poeiras"), walked into a police station in New Bedford, Massachusetts, to file a

report against Barbosa, Jillian Poeira's former live-in boyfriend. Aff. Anthony E. Fuller, Esq.

Supp. Def.'s Mot. Franks Hr'g [hereinafter, "Fuller Aff."] Ex. A at 3 (Application for Criminal

Complaint) [#73-1]; Ex. E at 11 (11:21), 17 (17:17-19) (Grand Jury Proceedings) [#73-5]. The

Poeiras spoke with Officer Gregory Sirois (hereinafter, "Officer Sirois"), who subsequently

drafted an Application for Criminal Complaint (hereinafter, "Application"). Ex. A at 2-3. The

Statement of Facts contained within the Application provides, in relevant part:

> On August 08, 2015[,] this writer had reason to speak with Ms[.]
> Jillian Poeira and her mother[,] Ana Poeira[,] at approximately
> 1245 hrs. Both stated that on this date at about 0700 hrs, Ms. Jillian
> Poeira's ex-boyfriend showed up at . . . [the] single family home
> where both females reside. Mr. John Barbosa . . . knocked on the
> door[,] and when Ms. Ana Poeira opened the door[,] he pushed his
> way inside the apartment[,] demanding to see Jillian. Ms. Ana
> Poeira pushed him against the wall and held him there and[,] as she
> did[,] he raised a black firearm into the air and pointed it [at] both
> females threatening to 'kill all of you[.'] Ms. Ana Poeira managed
> to push John back out the door. He left at this time. I asked why
> they waited until now to report the incident and Ana stated she had
> a doctor's appointment, and Jillian stated she was scared.

Id. at 3.

According to the Application, Officer Sirois confirmed information provided by Jillian

Poeira that Barbosa drives a gray Volvo. Id. He checked for, but did not find, outstanding

warrants or restraining orders as to Barbosa and Jillian Poeira. Id. at 4. He issued a "Be On the

Lookout" ("BOLO") notice for the Volvo and notified a fellow officer that Barbosa purportedly

frequents the New Bedford Library. Id. at 4. He requested that an arrest warrant issue for

Barbosa on a charge of home invasion, in violation of Mass. Gen. Laws ch. 265 § 18C.[1] Id. at 2.

---

[1] Section 18C of chapter 265 of Massachusetts General Laws provides:

> Whoever knowingly enters the dwelling place of another knowing
> or having reason to know that one or more persons are present
> within or knowingly enters the dwelling place of another and
> remains in such dwelling place knowing or having reason to know
> that one or more persons are present within while armed with a
> dangerous weapon, uses force or threatens the imminent use of
> force upon any person within such dwelling place whether or not
> injury occurs, or intentionally causes any injury to any person
> within such dwelling place shall be punished by imprisonment in
> the state prison for life or for any term of not less than twenty
> years.

In addition to issuing a warrant for Barbosa's arrest, Officer Sirois assisted Jillian Poeira in obtaining an emergency restraining order against him. Id. at 4. While at the police station, she handwrote an affidavit in support of her application for an Abuse Prevention Order. Ex. D at 4 (Abuse Prevention Order) [#73-4]; see also Ex. A at 4 [#73-1]. According to the affidavit,

> [w]hen [Ana] answered the door[,] she only opened it a little bit[,] and [Barbosa] said he wanted to talk to me. She said she had nothing to talk about and asked him to leave. He then pushed the door open and tried to come all the way in as my mother was trying to hold him back . . . My four year old seen [sic] them pushing each other and said he had a gun. When I ran to the phone to call the police, I heard my son say that and then seen [sic] the gun so I threw the phone and ran to my mom to help her push him out. He said [if] you call the cops I will kill everyone in this house.

Ex. D at 4.

On August 10, 2015, officers from the New Bedford Police Department entered the New Bedford Library and arrested Barbosa. Ex. B at 3 (CJIS Web Printout) [#73-2]; Gov't's Resp. Court's Inquiry Ex. A at 2 [#44-1]. A firearm and ammunition were seized from a bag resting near Barbosa's foot. Gov't's Resp. Court's Inquiry Ex. A at 2; Indictment [#1]. On November 12, 2015, a federal grand jury indicted Barbosa on a charge of Felon in Possession of a Firearm and Ammunition. Indictment.

Relying on the Fourth Amendment to the United States Constitution and Rule 12(b)(3)(c) of the Federal Rules of Criminal Procedure, Barbosa moved to suppress all items seized as fruits of this arrest, arguing that the arrest warrant had been issued unlawfully and without probable cause. Def.'s Mot. Suppress & Supp. Mem. [#37]. He did not move for a Franks hearing at that time. While his Motion to Suppress [#37] was pending before this court, Barbosa retained new counsel. Order [#51]; Order [#49]. On July 22, 2016, the court denied the motion to suppress. Mem. & Order [#58]. Barbosa now moves for a Franks hearing with respect to the accuracy and

scope of Officer Sirois' narrative accompanying the Application. Def.'s Mot. Franks Hr'g [#71].

III.    Discussion

In support of his motion, Barbosa argues that the narrative by Officer Sirois contained within the Application contains material inaccuracies and omits material facts in reckless disregard for the truth. Mem. Supp. Def.'s Mot. Franks Hr'g 6 [#72]. He further argues that Officer Sirois recklessly failed to investigate the Poeiras' complaint.[2] Id. at 9-12.

The hearing sought in this case is based on Franks v. Delaware, 438 U.S. 154, in which the Supreme Court delineated the requirements for triggering an evidentiary hearing on the veracity of a warrant affidavit. While a warrant affidavit is presumed to be valid, under Franks and its First Circuit progeny, the defendant may rebut the presumption and challenge its veracity upon a "substantial preliminary showing" (1) "that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth," and (2) that "this 'falsehood or omission must have been necessary to the finding of probable cause.'" United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015), cert. denied, 136 S. Ct. 494, 193 L. Ed. 2d 360 (2015) (quoting United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012) (internal brackets omitted)); see also Franks, 438 U.S. at 171-72.

To make the "substantial preliminary showing" necessary to obtain a Franks hearing, the defendant must identify with specificity the errors in the affidavit in a way that is "more than conclusory" and provide "a statement of supporting reasons." Franks, 438 U.S. at 170-71.

---

[2] Many of these issues were raised by able counsel in support of Barbosa's Motion to Suppress [#37] but outside of the context of a request for a Franks hearing. The government urges the court to decline to consider the merits of such issues on the dual bases of law of the case and untimeliness. Gov't's Resp. Def.'s Mot. Franks Hearing 1 [#76]. Because of the important issues at stake, the court entertains Barbosa's motion on the merits and, as set forth below, concludes that Barbosa has failed to meet the threshold showing required for a Franks hearing.

Reckless disregard for the truth is established by showing that the affiant "'in fact entertained serious doubts as to the truth' of the allegations." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir. 1984)). The fact finder may infer recklessness "from circumstances evincing obvious reasons to doubt the veracity of the allegations." Id. (quoting Williams, 737 F.2d at 602). A defendant who alleges the omission of material information from a warrant affidavit is entitled to a Franks hearing only if he or she shows that the omission was "either intentional or reckless" and that the "omitted information, if incorporated into the affidavit . . . [is] sufficient to vitiate probable cause." United States v. Tanguay, 787 F.3d 44, 49 (1st Cir. 2015).

   *1. Alleged Misstatements and Omissions*

   Barbosa contends that Officer Sirois recklessly omitted and misstated facts in the Application for a warrant that, if included and properly stated, would render the Poeiras' story incredible. He points to what he deems a reckless and material inconsistency between his stated weight of 140 pounds on the application and the weight of 180 pounds listed in the Criminal Justice Information System (hereinafter, "CJIS") Warrant Management System (hereinafter, "WMS"), which Officer Sirois accessed to check for outstanding warrants.[3] Mem. Supp. Def.'s Mot. Franks Hr'g 7 [#72]; Fuller Aff. Ex. A at 2 [#73-1]; Ex. B at 2 [#73-2]. He further notes that the Application omitted Ana Poeira's age of 59 years—a fact he considers material to the assessment of whether probable cause existed for his arrest. Mem. Supp. Def.'s Mot. Franks Hr'g 7. Barbosa also argues that the Application contradicts Jillian Poeira's handwritten

---

[3] Barbosa has provided this court with a printout from the CJIS WMS from August 10, 2015, the day he was arrested, showing his weight at 180 pounds. Fuller Aff. Ex. B at 2 [#73-2]. For the purpose of this opinion, the court will assume that Barbosa's weight also was listed as 180 pounds on CJIS WMS when Officer Sirois scoured the system for outstanding warrants on August 8, 2015.

statement in support of her application for an Abuse Prevention Order that Ana Poeira and

Barbosa were "pushing each other." Id. at 8; see also Fuller Aff. Ex. D at 4 (Abuse Prevention

Order) [#73-4].

However, even assuming that such facts were recklessly omitted or misstated in the

Application, this information is insufficient to vitiate probable cause. Barbosa contends that it is

not credible that a 59-year-old woman could push a gun-wielding, 180-pound, 41-year old man

against the wall and then out the door, and that, with such credibility undermined, no probable

cause existed to support the issuance of a warrant. But the acceptance of Barbosa's argument

requires a reading that Ana Poeira claimed to physically overpower him. Nothing in the

Application nor Jillian Poeira's affidavit mandates such a reading. First, the two accounts do not

materially differ. Both describe Ana Poeira answering the door, Barbosa pushing his way past

her, a physical altercation between the two, and Ana Poeira pushing him out the door.

Specifically, Jillian Poeira's affidavit states that her mother tried to hold Barbosa back, while the

Application indicates that she pushed and held him against a wall. These are not inconsistent.

Nor does the statement in the Application that Ana Poeira "managed to push [Barbosa] back out

the door" contradict the statements in Jillian Poeira's affidavit that he and her mother were

"pushing each other" and that Jillian Poeira "ran to [her] mom to help her push him out." Both

the Application and Jillian Poeira's affidavit made clear that there was some physical contact

between Barbosa and her mother. The only discrepancy, if one exists, is when that contact

ceased.

Barbosa places particular emphasis on this court's observation in its Memorandum &

Order [#58] denying his Motion to Suppress [#37] that,

>           [h]ad they reported that Barbosa had physically resisted Ana
>           Poeira after entering the apartment and that she had somehow

> physically overpowered him despite his resistance, the age and size
> differences might be of note. Instead, the report that after Barbosa
> pushed by Ana Poeira, she pushed him against the wall, held him
> there while he raised a gun and made verbal threats, and then
> managed to push him back out of the door suggests not that the
> women were untruthful but rather that Barbosa did not engage with
> them physically after first pushing into the apartment.

Mem. & Order 11-12 [#58]. However, that Barbosa and Ana Poeira may have continued to have

some physical contact once he entered the apartment does not mean that she claimed to have

overpowered him nor does it negate a finding of probable cause. That Barbosa and Ana Poeira

were "pushing each other," without more, does not suggest that he pushed her with all of his

might and that she physically overcame him. It says nothing of the degree of force he used. Even

if there existed a deviation between the version recounted in the Application and the version in

Jillian Poeira's affidavit such to amount to an omission, the fact that Barbosa pushed Ana Poeira

back is not a "circumstance[] evincing obvious reasons to doubt the veracity of the allegations."

Ranney, 298 F.3d at 78 (quoting Williams, 737 F.2d at 602).

Barbosa next contends that Officer Sirois recklessly omitted the fact that the Poeiras filed

a walk-in complaint at the police station rather than through a 911 call and that his statement in

the Application that "this writer had reason to speak with" the two women obscured this

allegedly material omission. Mem. Supp. Def.'s Mot. Franks Hr'g 8-9 [#72]. This argument too

fails. The Application makes no suggestion that the Poeiras reported the incident via a 911 call

immediately after the incident. To the contrary, although the Application may not explicitly state

that the Poeiras' first contact with the police was through a walk-in complaint, it makes clear that

more than five and a half hours passed between the incident and the filing of the complaint. The

key cause for concern here would be the delay, not the method in which the women reported the

incident. However, since the clerk-magistrate issuing the warrant found the existence of probable

cause in spite of this delay, it is improbable that a specific mention of the fact that they filed a walk-in complaint as opposed to a 911 call would vitiate this finding. See Spinelli v. United States, 393 U.S. 410, 419 (1969) (noting that reviewing courts should give "great deference" to the magistrate's determination of probable cause).

       *2.   Duty to Investigate Further*

Barbosa also claims that Officer Sirois had a duty to investigate the Poeiras' report further because the existence of probable cause hinged on the credibility of their uncorroborated accounts of an incident that they did not report for hours. Mem. Supp. Def.'s Mot. Franks Hr'g 11 [#72]. In particular, he alleges that Officer Sirois recklessly failed to investigate whether Ana Poeira opened the door knowing that Barbosa was outside. Id. at 12-13. He also faults Officer Sirois for not investigating *dismissed* charges against Jillian Poeira relating to truthfulness— charges of which he concedes Officer Sirois was unaware. Id. at 13-14.

While a victim's statement does not establish probable cause *per se*, B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984), police officers can "justifiably rely upon the credible complaint of a victim to support a finding of probable cause." Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004); see Murrell v. Petruzziello, No. 12-11727-FDS, 2013 WL 3786466, at *3 (D. Mass. July 17, 2013) (determining that police officers' "good-faith reliance" on a victim's statement supported a finding of probable cause, even though the statement later turned out to be false). Indeed, "[t]he uncorroborated testimony of a victim or other percipient witness" is "ordinarily" sufficient on its own to support a finding of probable cause. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004). A victim is considered a "reliable informant" even if "his or her reliability has not theretofore been proven or tested." Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir. 1972).

8

Here, it was reasonable to rely on the accounts of the Poeiras. Both women reported that they were present when Barbosa came to their home, and they shared a similar account of the event. See Healy v. Town of Hull, NO. 97-11257-GAO, 2000 U.S. Dist. LEXIS 421, at *11-13, 15 (D. Mass. Jan. 12, 2000) (finding probable cause for an arrest established based on the statements of the victim and her two friends who served as eyewitnesses). That both women met with Officer Sirois in person and gave him their address supports an inference that their allegations were truthful. See United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005) (noting that an officer's "face-to-face contact" with an informant supports the informant's reliability and an informant identifying himself so that he could be held responsible for providing false information "tends to establish an incentive for the informant to tell the truth").

Barbosa nevertheless contends that Officer Sirois had a duty to investigate the Poeiras' allegations further before submitting the Application to the clerk-magistrate. The First Circuit has "rejected the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest." Holder v. Town of Sandown, 585 F.3d 500, 505 (1st Cir. 2009) (citation omitted). When an officer has a complaint from a seemingly credible eyewitness, "exculpatory evidence must be substantial" to require the officer to investigate further. Acosta, 386 F.3d at 11. A duty to investigate further only arises in "highly idiosyncratic circumstances." Id.; see also Tanguay, 787 F.3d at 53 (determining that an officer had a duty to investigate further when the officer knew that the witness had a history of possible mental instability, "'scrapes' with the law," and a conviction for altering prescriptions).

In assessing whether the circumstances trigger a duty to investigate further, the court must first decide "whether the information known to [the officer] gave [the officer] an obvious reason to doubt [the complainant's] truthfulness" and, if so, whether those "doubts were of such

a magnitude" that failure to investigate further amounted to "reckless disregard for the truth." Tanguay, 787 F.3d at 54. If the answer to both questions is yes, the next inquiries are whether a "good-faith effort to dispel those doubts" would have uncovered new information that should have been included in the affidavit and whether an affidavit that included that new information "would continue to support a finding of probable cause." Id.

Barbosa argues that Officer Sirois' duty to investigate was triggered by the age and size disparity between Ana Poeira and Barbosa, the Poeiras' waiting for several hours to report the incident, and Barbosa and Jillian Poeira's pre-existing relationship. Mem. Supp. Def.'s Mot. Franks Hr'g 11 [#72]. None of these facts give rise to any "obvious reason" to doubt the complainants' veracity, let alone a reason of such magnitude to suggest that Officer Sirois' failure to investigate further evinces a reckless disregard for the truth.

As noted above, that Ana Poeira, an allegedly 59-year-old woman, and Barbosa, an allegedly 180-pound, 41-year-old man, pushed each other means only that Barbosa may not have used his total strength to subdue her. It does not mean that the incident did not happen nor does it call into question the Poeiras' credibility. Further, with respect to the delay, Officer Sirois did ask the women why they had not reported the incident sooner, to which they responded that Ana Poeira had a doctor's appointment and Jillian Poeira was scared. Finally, the fact that Barbosa and Jillian Poeira were once romantic partners does not give rise to a duty to investigate or diminish the existence of probable cause. See Holder, 585 F.3d at 505-06 (rejecting the argument that an officer has a reason to suspect the witness and thus a duty to investigate further when the officer knows about "a 'bad relationship' between the person under suspicion and a witness to the alleged crime"); see also White v. Town of Marblehead, 989 F. Supp. 345, 350 (D. Mass. 1997) (stating that "permitting the police to rely on a victim's credible statement in order to

determine probable cause is critical," particularly in cases of domestic violence where ignoring a victim's statement may lead to "tragic results"). Based on these facts, Officer Sirois was under no duty to investigate further.

IV.   <u>Conclusion</u>

For the above-stated reasons, Barbosa's <u>Motion for a *Franks* Hearing</u> [#71] is DENIED.

Date:  November 7, 2016                                         <u>/s/ Indira Talwani</u>

                                                                              United States District Judge